UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


UNITED STATES OF AMERICA          )
                                  )
                                  )
                                  )
v.                                )          No.  2:22-CR-131
                                  )
KANE FEE WRIGHT                   )

ORDER

This matter is before the Court on United States Magistrate Judge Cynthia R. Wyrick's

Report and Recommendation, filed on May 18, 2023, recommending that this Court deny

Defendant Kane Fee Wright's ("Defendant") Motion to Suppress. [Doc. 29]. On June 1, 2023,

Defendant filed timely objections to the Report and Recommendation. [Doc. 30]. The Government

responded on June 14, 2023. [Doc. 32]. For the following reasons, the Court **GRANTS IN PART**

**AND DENIES IN PART** Defendant's Motion to Suppress [Doc. 14].

I.     BACKGROUND

In November 2022, Defendant was indicted on three counts: (1) possession with intent to

distribute 40 grams or more of a mixture and substance containing fentanyl in violation of 21

U.S.C. §§ 841(a)(1), (b)(1)(B); (2) possession of a firearm in furtherance of a drug trafficking

offense in violation of 18 U.S.C. § 924(c)(1)(A); and (3) possession of a firearm by a convicted

felon in violation of 18 U.S.C. § 922(g)(1). [Doc. 1, at 1–2]. On March 17, 2023, Defendant filed

a Motion to Suppress. [Doc. 14]. The Magistrate Judge conducted a suppression hearing on April

27, 2023, and thereafter filed her Report and Recommendation. [Doc. 29].

1

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 59, "[a] district judge may refer to a magistrate judge for recommendation a defendant's . . . motion to suppress evidence." Fed. R. Crim. P. 59(b)(1). Within fourteen days after being served with a copy of the report and recommendation on a motion to suppress, "a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Crim. P. 59(b)(2). "A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b); see also Fed. R. Crim. P. 59(b)(3).

This Court must conduct a *de novo* review of those portions of the Report and Recommendation to which objection is made and may accept, reject or modify, in whole or in part, the Magistrate Judge's findings or recommendations. 28 U.S.C. § 636(b)(1)(C); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). "The district court is not required to review - under a *de novo* or any other standard – 'any issue that is not the subject of an objection.'" *Brown v. Bd. of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (emphasis added) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)). After reviewing the evidence, this Court is free to "accept, reject, or modify, in whole or in part, the findings or recommendations" of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

## III. ANALYSIS

Defendant seeks to suppress the results of a search at 351 Sewanee Avenue in Kingsport, Tennessee. [*See* Doc. 14]. In his Objections to the Magistrate Judge's Report and Recommendation, Defendant first argues that his initial consent to the search was invalid because it was "only granted in submission to [police officers'] claim of lawful authority that they had the

2

right to enter the home[.]"[1] [Doc. 30, at 4]. His second argument pertains to the results of a second search conducted after illegal items were observed in plain view during the first search. [*Id.* at 6].

As an initial matter, the Government concedes in their Response to Defendant's Objections that the "validity of the second search is moot" because the Government does not intend to introduce any of the additional items seized during the second search at trial. [Doc. 32, at 5]. Accordingly, with respect to items seized as a result of the second search, including psychedelic mushrooms and a press used to press a controlled substance into bricks, Defendant's Objections to the Report and Recommendation are **SUSTAINED**. Defendant's Motion to Suppress [Doc. 14] will be **GRANTED IN PART** with respect to the fruits of the second search. This leaves the Court to determine only the validity of the initial search of 351 Sewanee Avenue.

A. <u>Witness Credibility and Findings of Fact</u>

The Court has reviewed in full the recording of Defendant's suppression hearing. As an initial matter, Defendant's father, Michael Wright, testified at the suppression hearing that the Kingsport Police Department ("KPD") officers who conducted the initial search did not knock on the door prior to entering. He further testified that Defendant appeared to be standing in front of the door as if he was trying to block them from entering the residence, although he admittedly could not hear any conversation between Defendant and the KPD officers.

_____

[1] Defendant's Motion to Suppress [Doc. 14] does not raise the issue of whether the responding Kingsport Police Department police officers represented that they had lawful authority to search 351 Sewanee Avenue. Instead, Defendant's original motion related to whether exigent circumstances existed for the search. However, Defendant does not make an argument regarding exigent circumstances in his Objections to the Report and Recommendation, and so the Court will not address exigent circumstances herein. "The district court is not required to review - under a *de novo* or any other standard – 'any issue that is not the subject of an objection.'" *Brown v. Bd. of Educ.*, 47 F. Supp. 665, 674 (W.D. Tenn. 2014) (emphasis added) (quoting *Thomas v. Arn*, 474 U.S. 140, 149 (1985)).

The Magistrate Judge did not accept Michael Wright's version of events as credible. [Doc. 29, at 13–14]. She concluded that "it is impossible to square the timeframe offered by [Michael] Wright" with the consistent testimony of several other officers and that "other points of [Michael] Wright's testimony are simply illogical." [*Id.*] In contrast, Judge Wyrick found that the testimony of the law enforcement officers who responded to 351 Sewanee Avenue was "largely consistent" and that the officers were "credible." While Defendant's Objections to the Report and Recommendation mention Michael Wright's testimony in the factual summary, Defendant does not object to Judge Wyrick's credibility determinations or use Michael Wright's testimony as a basis for his argument that Defendant did not give valid consent to the initial search.

"When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determinations, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." *United States v. Johnson*, No. 10-20176, 2011 U.S. Dist. LEXIS 97577, at *6–*7 (W.D. Tenn. Aug. 30, 2011) (quoting *United States v. Robinson*, No. 1:07-CR-1, 2007 U.S. Dist. LEXIS 53290 (E.D. Tenn. July 23, 2007)). In general, "[c]redibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his *de novo* review of the record he finds a reason to question the magistrate judge's assessment." *Id.* (citations omitted). Defendant has not challenged the Magistrate Judge's determinations of credibility or fact finding, and the Court finds no basis for questioning the Magistrate Judge's assessment of the witnesses and their credibility. Accordingly, the Court will **ACCEPT** and **ADOPT** the findings of fact and credibility determinations as set forth in the Report and Recommendation. [Doc. 29, at 3–14]. The Court will now turn to whether the Magistrate Judge

4

properly interpreted the facts to determine that Defendant gave knowing and voluntary consent for the initial search of 351 Sewanee Avenue.

        **B.**        <u>**Validity of Defendant's Consent to Search**</u>

"It is well-settled that a person may waive his Fourth Amendment rights by consenting to a search." *United States v. Walls*, 116 Fed. App'x 713, 716 (6th Cir. 2004) (citations omitted). "In order for consent to be valid, the prosecution must show that it was 'freely and voluntarily given.'" *Id.* (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The Government must prove this "through 'clear and positive testimony.'" *United States v. Beauchamp*, 659 F.3d 560, 571 (6th Cir. 2011) (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)). Whether consent was freely and voluntarily given is "a question of fact to be determined from the totality of all the circumstances." *Walls*, 116 Fed. App'x at 716 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973)). "Among the relevant circumstances to be scrutinized are the defendant's youth, lack of education or low intelligence, the lack of any warnings regarding the accused's constitutional rights, as well as evidence of duress or coercion, such as, deprivation of food or sleep and prolonged detention or questioning." *United States v. Roberts*, No. 3:08-CR-175, 2009 U.S. Dist. LEXIS 123188, at *49 (E.D. Tenn. Dec. 21, 2009) (citation omitted).

The crux of Defendant's argument is that the officers' representations that they needed to "lay eyes" on Alister Wright constituted a representation of lawful authority to search 351 Sewanee Avenue. Defendant argues that "the proof established that the Defendant was hesitant to admit officers [to the residence] and that he only did so upon being informed by the officers that they were required to 'lay eyes' on his brother Alister." [Doc. 30, at 4]. Defendant argues that the responding officers could not point to any "policy or written procedure in existence requiring such a visual inspection," and that the facts established during the suppression hearing showed that

5

"Defendant's 'consent' was only based upon the officer's statements that they needed to enter the home to view Alister regardless of Defendant's consent." [*Id.* at 4]. Defendant concludes, based on these facts, that his consent for the responding officers to enter the home was based only on their claim of "lawful authority" that they had a right to enter 351 Sewanee Avenue.

The Court, however, disagrees with this interpretation of the facts. As previously explained, the Court has adopted Judge Wyrick's credibility determinations. KPD Officers Jared Hudgins and Sarah Hutton (the "Officers") responded to an overdose call at 351 Sewanee Avenue, knocked on the closed door of the residence, and announced themselves as police. [Doc. 29, at 3]. The Officers' weapons were not drawn. [*Id.* at 6]. Approximately thirty seconds later, Defendant opened the door. [*Id.* at 3]. He did not appear to be under the influence, and he was coherent. [*Id.* at 3]. The Officers informed Defendant that they were responding to an overdose call, and Defendant responded that his brother, Alister Wright, had overdosed but was doing "okay now." [*Id.* at 3, 6]. Officer Hudgins then told Defendant that despite the assurance that Alister Wright was okay, he and Officer Hutton needed to physically "lay eyes" on Alister before they could leave. [*Id.* at 4]. Officer Hudgins testified at the suppression hearing that according to his training and experience it would have been negligent for them to leave without doing so, and that because it was a "medical call," they also needed to "clear the scene" to ensure the safety of responding emergency medical technicians. [*Id.* at 4].

According to the recording of the suppression hearing, Officer Hudgins asked Defendant if it would be alright if he entered the home to "take a look at" Alister Wright. Officer Hutton also testified that she recalled Officer Hudgins asking Defendant if they could "lay eyes" on Alister per their training, and she reiterated that they needed to clear the scene for emergency medical services. Both Officer Hudgins and Officer Hutton testified that Defendant was initially hesitant or nervous

to let them inside and questioned the Officers' need to see his brother, but that he did ultimately consent after a short period of time had passed, and he did not ever explicitly deny them entry. [*Id.* at 4, 6–7]. Officer Hutton also testified that in overdose situations, if officers are refused entry to the residence where the overdosed individual is, they will ask for the individual to be brought outside to be checked over by emergency medical services. [*Id.* at 7].

The Court finds that, based on these facts, the totality of the circumstances reveal that Defendant voluntarily consented to allow the officers to enter his home. Defendant's Objection to the Report and Recommendation argues that he is a "young person without much educational background," but the Court cannot conclude based on the record that his age or intelligence prejudiced his ability to give valid, knowing consent. Testimony at the suppression hearing indicated that Defendant appeared sober and that he was coherent in response to the Officers' questions. Further, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Bustamonte*, 412 U.S. at 227. While the factors of age, intelligence, and knowledge of the right to refuse might weigh slightly in Defendant's favor, the Court finds that they are outweighed by the lack of evidence of duress or coercion.

Defendant was not detained prior to giving consent for the initial search, the Officers were uniformed but did not have their weapons drawn when they approached the residence and spoke to Defendant, and the conversation was relatively brief before Defendant permitted the Officers to enter. There is no evidence that the Officers engaged in any sort of behavior other courts have found to result in invalid consent, such as touching a defendant before he consented, using excessive force when knocking at the residence, threatening the defendant with jail time, or telling a defendant he was not free to leave or refuse. *See United States v. Doss*, No. 5:16-CR-16-TBR,

7

to let them inside and questioned the Officers' need to see his brother, but that he did ultimately consent after a short period of time had passed, and he did not ever explicitly deny them entry. [*Id.* at 4, 6–7]. Officer Hutton also testified that in overdose situations, if officers are refused entry to the residence where the overdosed individual is, they will ask for the individual to be brought outside to be checked over by emergency medical services. [*Id.* at 7].

The Court finds that, based on these facts, the totality of the circumstances reveal that Defendant voluntarily consented to allow the officers to enter his home. Defendant's Objection to the Report and Recommendation argues that he is a "young person without much educational background," but the Court cannot conclude based on the record that his age or intelligence prejudiced his ability to give valid, knowing consent. Testimony at the suppression hearing indicated that Defendant appeared sober and that he was coherent in response to the Officers' questions. Further, "[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent." *Bustamonte*, 412 U.S. at 227. While the factors of age, intelligence, and knowledge of the right to refuse might weigh slightly in Defendant's favor, the Court finds that they are outweighed by the lack of evidence of duress or coercion.

Defendant was not detained prior to giving consent for the initial search, the Officers were uniformed but did not have their weapons drawn when they approached the residence and spoke to Defendant, and the conversation was relatively brief before Defendant permitted the Officers to enter. There is no evidence that the Officers engaged in any sort of behavior other courts have found to result in invalid consent, such as touching a defendant before he consented, using excessive force when knocking at the residence, threatening the defendant with jail time, or telling a defendant he was not free to leave or refuse. *See United States v. Doss*, No. 5:16-CR-16-TBR,

7

Case 2:22-cr-00131-JRG-CRW   Document 38   Filed 08/23/23   Page 7 of 10   PageID #: 113

2017 U.S. Dist. LEXIS 68175, at \*11–\*12 (W.D. Ky. May 4, 2017) (collecting cases). There is no testimony in the record that Defendant expressed or felt that he had no choice but to acquiesce to the Officers' request. *See United States v. Worley*, 193 F.3d 380, 386 (6th Cir. 1999). The Sixth Circuit has also noted that hesitation to agree to an initial request to search can "indicate . . . that [the defendant] knew he had a right to refuse the search and that he contemplated exercising that right." *United States v. Lucas*¸ 640 F.3d 168, 175 (6th Cir. 2011).

In light of the forgoing, the Court finds that Officer Hudgins's statement that he and Officer Hutton asked or needed to "lay eyes" on Defendant does not constitute an improper display of lawful authority which would invalidate Defendant's consent. The Sixth Circuit has "previously characterized the government's burden in this regard as establishing that a suspect's purported consent 'was an unequivocal statement of free and voluntary consent, not merely a response conveying an expression of futility in resistance to authority or acquiescing in the officers' request.'" *United States v. Walls*, 116 Fed. Appx. 713, 717 (6th Cir. 2004). Defendant argues that Officer Hudgins "asserted to the Defendant that, when responding to an overdose call, KPD officers were required to visually ascertain the health of the overdose suspect," and that when Officer Hudgins "communicated this policy to the otherwise-hesitant Defendant," he was "essentially telling him he had no choice but to consent to the entry of the officers." [Doc. 30, at 5].

While the Officers did explain to Defendant that they needed to see for themselves that Alister Wright was okay, which is why they requested entry to Defendant's residence, there are no credible facts in the record to support that either Officer represented that they were required to enter the residence to do so or that Defendant felt he could not resist their entry. Defendant was

8

free to refuse the Officers entry, in which case the Officers would have most likely asked for Alister Wright to be brought outside.

The case law related to representations of legal authority that Defendant cites does not persuade the Court to interpret the facts in this case otherwise. In *United States v. Lazar*, agents presented a non-compliant letter from a TennCare Commissioner to the defendant as an improper show of lawful authority. No. 04-20017 DV, 2006 WL 8435366, at *3 (W.D. Tenn. Sept. 14, 2006). Further, after reviewing the TennCare letter, no one made an unequivocal statement made giving consent to search. *Id.* at *5. The Magistrate Judge recommended that the fruits of the search be suppressed. *Id.* at *9.

Here, the Officers did not cite to any warrant, letter, law, or other policy to gain entry to Defendant's residence. After Defendant hesitated to let them enter, the Officers merely further explained why they were seeking entry, at which point Defendant gave them consent. Consent was given within a reasonably short amount of time, and there is no evidence that the Officers overly explained why they were requesting entry in order to coerce Defendant to allow them inside or to wear him down. Additionally, Officer Hutton testified during the suppression hearing that Defendant gave the Officers verbal consent to enter to check on Alister Wright, saying "yeah, you can come in and check on him." Officer Hudgins also testified that Defendant said "sure, that's fine," after he asked to enter to check on his brother. Although these statements are not identical, both statements are verbal expressions of consent, and as previously explained, Judge Wyrick found Officers Hutton and Hudgins to be credible. The barrel of a firearm and a drug paraphernalia were then observed in plain sight in the bedroom where Alister Wright was lying under a blanket.

9

The facts established by the Government at the suppression hearing based on the Officers' "clear and positive testimony"[2] show that, rather than being coerced, Defendant simply changed his opinion after the Officers explained why they were asking to see Alister Wright, and he freely and voluntarily allowed the Officers to enter 351 Sewanee Avenue. Defendant's Objection to the Report and Recommendation related to the initial search is therefore **OVERRULED**. Defendant's Motion to Suppress [Doc. 14] is **DENIED IN PART** with respect to the fruits of the initial search.

## IV.     CONCLUSION

The Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Suppress [Doc. 14]. With respect to items seized as a result of the second search, Defendant's Objections to the Report and Recommendation are **SUSTAINED**. Defendant's Motion to Suppress [Doc. 14] will be **GRANTED IN PART** with respect to the fruits of the second search. However, Defendant's Objections to the Report and Recommendation related to the initial search are **OVERRULED** and Defendant's Motion to Suppress [Doc. 14] is **DENIED IN PART** with respect to the fruits of the initial search.

So ordered.

ENTER:

_____s/J. RONNIE GREER_____
UNITED STATES DISTRICT JUDGE

---

[2] *Beauchamp*, 659 F.3d at 571.

10